O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN DOUGLAS SMITH,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. EDCV 15-01916-KES<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Glenn Douglas Smith ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying his application for Social Security Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the ALJ's decision is AFFIRMED.

## I.
## BACKGROUND

Plaintiff applied for DIB and SSI on March 16, 2012, alleging the onset of disability on August 1, 2011. Administrative Record ("AR") 157, 163. On

November 15, 2013, an ALJ conducted a hearing, at which Plaintiff, who was represented by counsel, appeared and testified. AR 25-48.

On February 28, 2014, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 7-24. The ALJ found that Plaintiff had the severe impairments of "degenerative disc disease and degenerative joint disease of the cervical spine, degenerative joint disease of the right shoulder, hypertension, insulin dependent diabetes mellitus, obesity, coronary artery disease with myocardial infarctions and repeat stenting." AR 12. The ALJ found Plaintiff's medically determinable impairment of carpal tunnel syndrome and pneumothorax (i.e., collapsed lung) to be non-severe and/or not expected to last for a period of 12 months. AR 13.

Notwithstanding his impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.156 and 416.967(b) with the following additional restrictions:

- stand and/or walk for six hours in an eight-hour workday with customary breaks, but no more than 15-20 minutes at a time;
- sit for six hours in an eight-hour workday with customary breaks with brief position changes after about 45 minutes;
- occasionally climb ramps and stars, balance, stoop, kneel, crouch and crawl;
- never climb ladders, ropes, or scaffolds;
- no work near unprotected heights, around moving machinery, or other hazards;
- no work requiring hypervigilance or intense concentration on a particular task;
- no work involving concentrated exposure to extremes in temperatures, smoke, fumes, odors or other pulmonary irritants;
- no lifting overhead with his dominant right arm;

2

• occasional reaching overhead with his dominant right arm; and

• no repetitive or constant movement of his head or neck, but he can frequently move his head or neck. AR 14.

Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could work as a storage facility clerk (DOT 295.367-026), mail clerk (DOT 209.687-026), or office helper (DOT 239.567-010). AR 19. Based on these findings, the ALJ concluded that Plaintiff is not disabled. Id.

## II.
## ISSUES PRESENTED

Issue No. 1: Whether the ALJ's determination that Plaintiff can work as a storage facility clerk, mail clerk or office helper is inconsistent with the DOT.

Issue No. 2: Whether the ALJ properly discounted the opinion of consultative examiner, Dr. Amy Kanner, that Plaintiff is limited to sedentary work. See Dkt. 17, Joint Stipulation ("JS") at 3.

## III.
## DISCUSSION

**A.     The ALJ's Findings are Not Inconsistent with the DOT.**

   **1.     Summary of the VE's Testimony.**

At the hearing, the ALJ asked the VE if a hypothetical person with Plaintiff's RFC – but without the restriction of being off-task up to 10% of the time – could perform any work in the national economy. AR 45-46. The VE identified the jobs of storage facility clerk, mail clerk, and office helper. Id.

The ALJ then changed the hypothetical to add the restriction of being off-task up to 10% of the workday or workweek. AR 46. The VE testified that this additional restriction would not preclude the hypothetical person from performing any of the three jobs previously identified, nor would it "erode the numbers in any way." Id. The VE testified, however, that being off-task up to

20% of the workday or workweek would preclude employment in those jobs. Id. Finally, the VE testified that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). Id.

### 2. Plaintiff's Contentions.

Plaintiff contends that the ALJ's "determination that the plaintiff could perform the jobs of storage facility clerk, mail clerk, and office helper is in error because such jobs require demands that are in excess of the Plaintiff's RFC." JS at 6. Specifically, Plaintiff contends that the restriction that he be off-task up to 10% of the time precludes employment in these fields. According to Plaintiff, being off-task 10% of the time is equivalent to missing 2 days of work each month, and "[m]ost companies would not permit an individual to miss that amount of work every month on a regular basis." JS at 5.

### 3. Discussion.

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT provides classifications for jobs based on their exertional and non-exertional demands. It does not, however, expressly address what percentage of the workday or workweek an employee must be on-task.

Even if the DOT were interpreted as implicitly requiring that workers be on-task 100% of each workday, the VE's testimony would be sufficient to resolve any conflict. The ALJ specifically asked the VE whether a hypothetical person with Plaintiff's RFC, including the limitation of being off-task 10% of the workday or workweek, could perform the jobs of storage facility clerk, mail clerk, and office helper, and the VE testified that he could. AR 45-46. The ALJ was entitled to rely on the VE's testimony. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (holding that "[a] VE's recognized expertise provides the necessary foundation for his or her

testimony," and "no additional foundation is required"); see also Calvey v. Astrue, 2013 U.S. Dist. LEXIS 7398, at * 19-20 (C.D. Cal. Jan. 17, 2013) (finding no inconsistency with DOT where VE testified claimant could work as a housekeeper despite limitation of being off-task 10% of the time).

For these reasons, Plaintiff's first issue does not merit reversal.

**B.**     **The ALJ Gave Specific and Legitimate Reasons Supported by Substantial Evidence for Discounting Dr. Kanner's Opinion.**

   **1.**     **Applicable Law.**

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither, but reviewed the plaintiff's medical records. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. Id.

When a treating or examining physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). When it is contradicted, the ALJ must provide "specific and legitimate reasons" for discounting it that are supported by substantial evidence. Id. (citation omitted). The weight given a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. 20 C.F.R. § 416.927(c)(3)-(6).

   **2.**     **Summary of Medical Opinion Evidence and the ALJ's Analysis.**

Dr. Kanner performed an internal medicine evaluation on Plaintiff on June 29, 2012. AR 446. Dr. Kanner's report states, "The source of information for this evaluation was the claimant who was a good historian."

AR 447.  The report also states, "There are no medical records available for review at this time."  AR 449.  Her findings based on her own physical examination are listed at AR 450-53.  All of her observations are within normal limits, except her observation that Plaintiff was experiencing "significant decreased sensation dorsal and plantar surfaces of both feet."  AR 452.  With regard to Plaintiff's heart condition and chest pain, Dr. Kanner relied on Plaintiff's reporting.  She noted, "Claimant states he uses Nitroglycerin once to twice a day and he has chest pain approximately twice daily, mid-chest, feeling like 'stabbing or pressure' rated at 8/10.  Claimant states this even occurs at rest. … Claimant states the pain can last from 20 minutes up to 12 hours."  AR 448.

Dr. Kanner opined that Plaintiff is able to stand, walk or sit for 6 hours of an 8-hour workday, consistent with the RFC determined by the ALJ.  AR 454.  However, she limited Plaintiff to lifting and carrying "10 pounds occasionally and fewer than 10 pounds frequently."  Id.  This limitation is consistent with sedentary work, not light work. [1]  She explained that she imposed these exertional limits "due to previous myocardial infarctions with stent placement but ongoing chest pain."  Id.

Plaintiff's medical records were reviewed by two agency physicians:  Dr. Spellman in July 2012 (AR 49-70) and Dr. Wong in December 2012 (AR 73-82).  Both of these doctors opined that Plaintiff could perform lifting and carrying consistent with light work, rather than sedentary work.  With regard to Plaintiff's claims of continuing chest pain, Dr. Spellman found "alleged

---

[1] These lifting restrictions are consistent with sedentary work.  Sedentary work involves lifting no more than 10 pounds at a time, whereas light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 CFR §§ 404.1567 and 416.967.

persisting severity is not evident in the longitudinal treatment record showing stentings in mid and late 2011, occasions where claimant had atypical chest pain but in the end stable status ….″ AR 64. Dr. Spellman also noted a "benign" heart exam in March 2012. AR 64, citing AR 421-429.

Dr. Wong noted that records showed Plaintiff's ejection fraction ("EF") "has improved from 40% to 65% which is normal."[2] AR 76. Dr. Wong also noted that Plaintiff "does not have cardiac symptoms on 11/12 examination.[3] The light RFC is appropriate give improved cardiac status …." Id.

The ALJ gave three reasons for agreeing with the RFC opinions of Drs.

---

[2] An EF of 65% means that 65% of the blood in the left ventricle is pushed out with each heartbeat. See http://www.heart.org/HEARTORG/Conditions/HeartFailure/SymptomsDiagnosisofHeartFailure/Ejection-Fraction-Heart-Failure-Measurement. A normal heart's ejection fraction may be between 50 and 70. Id. On July 27, 2011, Plaintiff's EF was 40%. AR 347. However, records from July 29, 2011, September 2, 2011, and June 15, 2012 all report Plaintiff's EF as 60%. AR 540, 564, 592. On January 9, 2012, Plaintiff's EF is reported as "between 65%-70%." AR 520. Just a few days later, records dated January 12, 2012 show Plaintiff's EF as 40%. AR 346, 519. In April 2013, Plaintiff's EF was 51% with stress and 44% at rest. AR 691.

[3] Plaintiff's November 2012 and 2013 treatment notes say, "Negative for chest pain." AR 477, 767. In April 2013, Plaintiff was brought to the hospital while in custody after an "altercation with police" because he complained of chest pain. He underwent "stress testing and was cleared by Cardiology for discharge …." AR 663-64. See also, AR 624, 646 (8/26/13 records saying, "patient having no symptoms consistent with acute coronary syndrome, but rather pleuritic chest pain and no risk factors …" and "Based on your exam today, the exact cause of your chest pain is not certain. Your condition does not seem serious at this time, and your pain does not appear to be coming from your heart."). Plaintiff also had a chest x-ray in August 2013, the reported findings from which were "The cardiac silhouette is normal in size and position. Pulmonary vessels are normal in caliber. The lungs are moderately expanded and clear. Impression: no active disease." AR 660.

7

Spellman and Wong while giving Dr. Kanner's opinion "little weight." AR 17. First, the ALJ noted that Dr. Kanner had only examined Plaintiff once. Id. Second, the ALJ found that her opinion that Plaintiff could lift/carry no more than 10 pounds was "not consistent" with her "minimal objective findings." Id. The ALJ correctly noted that Dr. Kanner's only positive findings were "decreased sensation in [Plaintiff's] lower extremities." AR 16. Third, the ALJ found Dr. Kanner's opinion "inconsistent with the objective medical evidence and the record as a whole …." AR 17.

### 3. Discussion.

The ALJ correctly found that Dr. Kanner's lifting restrictions were not based on her own objective findings concerning any of Plaintiff's impairments or even on a review of his medical records. Rather, they were based on Plaintiff's June 2012 self-reported history of myocardial infarctions in July 2011 and December 2011 and continuing chest pain. Thus, the ALJ did not err in concluding that Dr. Kanner's opinion restricting Plaintiff to sedentary work was not supported by her own objective findings.

In contrast to Dr. Kanner, Dr. Wong had access to Plaintiff's medical records. Based on those records, Dr. Wong opined that Plaintiff's heart condition had improved. AR 76. This opinion is supported by the medical evidence. See, 2012 and 2013 medical evidence summarized in n. 3, above. Had Dr. Kanner had access to this updated information, or any objective measurements of Plaintiff's cardiac functioning, she might have reached a different opinion concerning Plaintiff's lifting capacity. Under such circumstances, the ALJ did not err in determining that Dr. Kanner's opinion was inconsistent with the record as a whole and therefore crediting the opinions of Drs. Spellman and Wong over that of Dr. Kanner. See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (ALJ is responsible for resolving conflicts in the medical evidence).

## IV.
## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

Dated: June 22, 2016

                                            /s/ Karen E. Scott
                                            KAREN E. SCOTT
                                            United States Magistrate Judge